UNITED STATES

v.

**Wayne TATUM, 212 56 6994 Staff Sergeant (E–6), U.S. Marine Corps.**

**NMCM 91 1141.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 21 July 1990.

Decided 27 April 1992.

LT David P. Sheldon, JAGC, USNR, Appellate Defense Counsel.

LT K.S. Anderson, JAGC, USNR, Appellate Government Counsel.

Before JONES, REED and LAWRENCE, JJ.

REED, Judge:

Appellant was tried on 23 May and 17–21 July 1990 by a general court-martial, with members. Consistent with his not guilty pleas, appellant was acquitted of one speci-

fication of rape (Charge I), one specification of carnal knowledge (Charge I), three specifications of sodomy (Charge II), two specifications of assault (Charge III), and one specification of indecent assault (Charge IV), in violation of Uniform Code of Military Justice [hereinafter UCMJ], Articles 120, 125, 128, and 134, 10 U.S.C. §§ 920, 925, 928, and 934. Contrary to his pleas, he was found guilty of one specification of fraud[1] (Additional Charge I) and one specification of dishonorable failure to support his dependents[2] (Additional Charge II), in violation of UCMJ, Articles 132[3] and 134,[4] 10 U.S.C. §§ 932 and 934. He was sentenced to a bad-conduct discharge.

Appellant has assinged the following errors:[5]

■ The substance of the Government's allegations under Article 132 is that appellant collected a Basic Allowance for Quarters at the "with dependents" rate and a Variable Housing Allowance while living in an on-base barracks and not providing support to his dependents who elected to live in Baltimore, Maryland, the claim for such

1. Additional Charge I: Violation of the UCMJ, Article 132, 10 U.S.C. § 932. Specification: In that Staff Sergeant Wayne Tatum, U.S. Marine Corps, Marine Aircraft Group 26, 2d Marine Aircraft Wing, Fleet Marine Force, Atlantic, Marine Corps Air Station, New River, Jacksonville, North Carolina, did, at Marine Corps Air Station, New River, Jacksonville, North Carolina, between July 1987 and February 1990, by signing a Variable Housing Allowance application on 3 November 1989, by signing a Leave and Earnings Statement on 24 May 1989 certifying that his housing costs as shown on his previous Variable Housing Allowance application had not changed and by accepting pay which included amounts for Basic Allowance for Quarters and Variable Housing Allowance, present for payment a claim against the United States in the amount of about $12,675.18, which claim was false and fraudulent in the amount of $12,-675.18 in that the said Staff Sergeant Tatum collected amounts for Basic Allowance for Quarters and Variable Housing Allowance while living in an on-base barracks and not providing support to his dependents, and said claim was then known by the said Staff Sergeant Tatum to be false and fraudulent.

2. Additional Charge II: Violation of the UCMJ, Article 134. Specification: In that Staff Sergeant Wayne Tatum, U.S. Marine Corps, Marine Aircraft Group 26, 2d Marine Aircraft Wing, Fleet Marine Force, Atlantic, Marine Corps Air Station, New River, Jacksonville, North Carolina, having an obligation to support his dependents, said dependents being his wife and children, did, at Marine Corps Air Station, New River, Jacksonville, North Carolina, and Baltimore, Maryland, between about July 1987 and February 1990, dishonorably fail to provide said support.

3. Article 132, UCMJ, 10 U.S.C. § 932, provides in pertinent part:

Any person subject to this Chapter—
  (1) who, knowing it to be false or fraudulent—

(A) makes any claim against the United States or any officer thereof; or
(B) presents to any person in the civil or military service thereof, for approval or payment, any claim against the United States or any officer thereof;
(2) who, for the purpose of obtaining the approval, allowance, or payment of any claim against the United States or any officer thereof—
(A) Makes or uses any writing or other paper knowing it to contain any false or fraudulent statements;

.      .      .      .      .

shall, upon conviction, be punished as a court-martial may direct.

4. Article 134 provides:

Though not specifically mentioned in this chapter, all disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces, and crimes and offenses not capital, of which persons subject to this chapter may be guilty, shall be taken cognizance of by a general, special or summary court-martial, according to the nature and degree of the offense, and shall be punished at the discretion of that court.

5. I. THE EVIDENCE WAS LEGALLY INSUFFICIENT TO PROVE APPELLANT GUILTY OF DEFRAUDING THE GOVERNMENT OF FUNDS OR GUILTY OF FAILING TO SUPPORT HIS DEPENDENTS WHERE THE GOVERNMENT FAILED TO PROVE APPELLANT'S INELIGIBILITY TO BAQ WITH DEPENDENTS OR VHA AND WHERE APPELLANT'S SPOUSE HAD MADE NO COMPLAINT EITHER TO MILITARY OR CIVILIAN AUTHORITIES WITH REGARD TO APPELLANT'S NONSUPPORT.
II. IN THE ALTERNATIVE, IF ADDITIONAL CHARGE I IS FOUND TO BE AN OFFENSE UNDER THE U.C.M.J., THE GOVERNMENT DID NOT PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT

allowances therefore being false and fraudulent. We disagree.

Throughout the trial of appellant there were many references to the Department of Defense Pay and Entitlements Manual [hereinafter DODPM] as well as the Marine Corps' Manual for Legal Administration [hereinafter LEGADMINMAN]. We note at the outset that the introductory section to the DODPM indicates that it "provides statutory provisions for entitlements, deductions, and collections, and establishes Department of Defense policy on the pay and allowances of military personnel" and that "[t]he provisions of ... [the DODPM] apply to all Department of Defense *activities*. The manual is issued for the information, guidance, and compliance of all personnel [involved] in the administration of military pay." DODPM, at iii, 9 March 1987, (emphasis added). Thus we refuse to attribute to the appellant detailed knowledge of its contents. Nevertheless we will use the provisions contained therein to explain our decision.[6]

"Dependent," as defined in the DODPM, with "respect to a member of a uniformed service, ... means: (1) Spouse; [and] (2) Unmarried child ... who ... is under 21 years of age...." DODPM, Attachment 1, GLOSSARY OF TERMS at A1–1. No mention is made in the definition that would indicate dependency hinges on support.[7] Additionally the DODPM specifically indicates that:

POSSESSED THE REQUISITE MENS REA FOR FRAUD.

6. Similarly, the LEGADMINMAN provides that "[t]his Manual is published to promulgate policies, procedures, guidance, and instructions for the administration of discipline, law, and legal matters in the Marine Corps and the Marine Corps Reserve." LEGADMINMAN, Introduction at vii.

7. There is no explanation or definition of "Primary Dependent" although that term is used often on documents signed by the appellant from which the fraud is alleged. We assume those terms refer to immediate members of the family.

8. 37 U.S.Code § 403(a) provides in part that "a member of a uniformed service who is entitled to basic pay is entitled to a basic allowance for quarters ... according to the pay grade in which he is assigned...."

Proof of support of a lawful spouse or unmarried, minor, legitimate child of a member is generally not required.[8] However, when evidence (e.g., special investigation reports; record reviews; fraud, waste and abuse complaints; sworn testimony of individuals; statement by member) or complaints from dependents of nonsupport or inadequate support of dependents are received, proof of adequate support ... will [then] be required.[9] Failure to support a dependent, on whose behalf BAQ is being received, will result in nonentitlement to BAQ and recoupment for periods of nonsupport of inadequate support.[10]

DODPM para. 30236 at 3–24, (footnotes added). Similarly, the LEGADMINMAN provides that "[t]he Marine Corps will not act as a court in spousal and child support matters. The amount of support to be provided for dependents should either be established by mutual understanding of the parties concerned or adjudicated in civil courts.... Entitlement of members to basic allowance for quarters on behalf of dependents is provided by statute." LEGADMINMAN, section 8001, page 8–3.

Thus we conclude, as did the trial judge in *United States v. Roberts*, 33 M.J. 819 (N.M.C.M.R.1991), appellant "received the amounts alleged as a statutory entitlement. The subsequent mis- or mal-application of the funds is a matter for state or adminis-

37 U.S.Code § 403a(a)(1) provides that "a member of a uniformed service entitled to basic allowance for quarters is entitled to a variable housing allowance *under this section* whenever assigned to duty in an area of the United States which is a high housing cost area with respect to that member."

9. 37 U.S.Code § 403(h) provides in part that "[t]he Secretary concerned, or his designee, may make any determination necessary to administer this section with regard to enlisted members, *including determinations of dependency* and relationship, and may, when warranted by the circumstances, reconsider and change or modify any such determination." (Emphasis added.)

10. Our reading of this Manual thus convinces us that entitlements cease *only* when an administrative determination is made that dependents are not being supported. Absent such a determination, the entitlements continue, as they have in the case before us.

trative law until the UCMJ makes non-support of dependents an offense." *Id.* at 820.

We note that the DODPM provides that "[a]ny member who submits a claim for BAQ which contains *false statements* is subject to court-martial or criminal prosecution." DODPM, paragraph 30204, page 3–17, (emphasis added). However, based on the statutory basis for BAQ and VHA, and the implementing instructions to the statutes, we are unable to discern any false statements by the appellant. Prosecution Exhibits 6 through 9 indicate that he claimed his wife and the four children of that marriage as his dependents—clearly allowed by the U.S.Code and by the DODPM, as they met the statutory and regulatory requirements for dependents, until determined otherwise by competent authority. Additionally, he listed his house in Baltimore, where his family resided, for VHA purposes—also authorized. *Id.*

The Government alleges that all this may be true but that the fraud occurred when appellant did not provide support for these dependents and still claimed BAQ at the "with dependents" rate and VHA. However, no administrative determination had been made disallowing the appellant's dependents for BAQ or VHA and nowhere on the forms admitted into evidence by the prosecution is there a requirement that appellant detail the amount of support he provides his dependents in order to obtain the allowances. At no time did appellant make any false statement in signing documents regarding the support he provided to his dependents.[11]

■ We also note that a violation of Article 132, UCMJ, requires a false or fraudulent intent. Appellant was questioned during trial about his application for BAQ and VHA.

Question by the military judge:

Q. Prosecution Exhibit 8 was signed in December of 1989, was it not?

A. Yes sir.

Q. At that time you made the decision, and had not been supporting your dependents; is that not correct?

A. The decision was made before then, yes, sir.

Q. So you signed it knowing you were not supporting your dependents?

A. Sir, I didn't sign this saying that I would support my dependents.

Q. Well why did you sign it?

A. I signed it, sir, because S–1 told me to verify that these people on this page were my dependents.

Q. Did you know what the paper was for?

A. Sir, in all honest (sic), no, sir. I sign them every year, two and three times; LES's that just say, verify that these are your dependents. I look at them, yes, they are my dependents and I sign them. The only time I even deal with my dependents is for ID cards and this, once a year I believe, and LES's are so many other times. But this particular page, I've never read in its entirety other than it's a dependency application, these are my dependents, where do you want me to sign and I sign it.

Based on the evidence of record, we are not convinced that even if appellant submitted a false claim that he did so knowing it was false or fraudulent or that he intended to defraud the Government of any monies.

■ In Additional Charge II and its specification, the Government has attempted to develop a novel specification dealing with a dishonorable failure to provide support of dependents. It does so by latching onto a specification found in the Manual for Courts–Martial (MCM), United States, 1984, dealing with a dishonorable failure to pay just debts. *See* MCM, Part IV, para. 71.

■ We begin by recognizing the proposition that the general article is not "a catchall as to make every irregular, mis-

---

**11.** We acknowledge Mrs. Tatum's statement that appellant has not paid any of the mortgage payment on the house in Baltimore for three years. Record at 418. However, the clear assumption is that appellant made all mortgage payments prior to that time, 1980 to 1987. We consider the use of the house owned by both Mrs. Tatum and appellant to constitute some support for the Tatum family by appellant. Additionally, appellant testified he gave $300.00 to his wife on a least two occasions. Record at 786.

chievous, or improper act a court-martial offense." *United States v. Sadinsky,* 14 U.S.C.M.A. 563, 565, 34 C.M.R. 343, 345 (1964). There is no requirement, of course, that conduct be prohibited by some order, regulation, or statute in order to fall within the proscription of Article 134, UCMJ. 34 C.M.R. at 346. In his discussion of the antecedent to Article 134 and the term "to the prejudice of good order and military discipline," Colonel Winthrop observes that the act or duty neglected must be one which a military person may legally and properly be called upon to do or perform. William Winthrop, *Military Law and Precedents* 723 (2d ed. 1920). In this regard we are persuaded by the language found in the Marine Corps' LEGADMINMAN:

> Marines have a legal and moral obligation to support their spouse and family. What is adequate and reasonably sufficient support is a complex and individual matter dependent on numerous factors, and *may be resolved permanently only in the civil courts.* Salient facts that should be considered are the pay of the Marine; any other private income or resources of the Marine *and the dependents;* the cost of necessities and every day living expenses and financial obligations of the dependents; and the expenses and other financial obligations of the Marine in relation to the Marine's income.

LEGADMINMAN, Chapter 8, at 8–3 (emphasis added).

The evidence contained in the record of trial indicates there was no divorce decree or separation agreement, or even an agreement among the parties, that set a certain amount of support for appellant to pay. Had there been such and had appellant dishonorably failed to make those payments, a possibility exists that he could have been charged with a dishonorable failure to pay just debts under Article 134, UCMJ. However, such is not the case here.

■ Even if we were to find that a charge of dishonorable failure to support dependents lies under Article 134, UCMJ, we would still have to set aside the findings here because we do not believe the evidence of record establishes a dishonorable failure to support. The elements of a dishonorable failure to pay a debt include a requirement for a "certain sum" that is "due and payable on or about a certain date" and a dishonorable failure to pay. MCM, Part IV, para. 71. Additionally, "[t]he failure to pay must be characterized by deceit, evasion, false promises, or other distinctly culpable circumstances indicating a deliberate nonpayment or grossly indifferent attitude toward one's just obligations." *ID,* We do not believe the evidence of record supports these elements.

There is evidence that Mrs. Tatum worked for the U.S. Postal Service and earned twice what appellant earned in the Marine Corps. There is also evidence indicating substantial debts accrued by appellant in defense of civil criminal proceedings in Baltimore and for this court-martial as well as expenses he incurred in support of children born out-of-wedlock. No promises of support had been made by appellant to his wife. There was disagreement between the parties on the ability of appellant to visit his children, who continued to reside with the wife. Additionally, there is evidence of some support provided by appellant—monetary payments as well as use by the wife and children of a home owned by the parties together but for which mortgage payments, at least for the first seven years of ownership, had been made by appellant.

Thus on the basis of the record provided to us we are not persuaded that the action of the appellant regarding his dependents, if such an offense were to lie, was dishonorable.

The findings of guilty to Additional Charges I and II and their specifications are set aside and Additional Charges I and II and their specifications are dismissed. In accordance with the foregoing, the sentence is set aside.

Senior Judge JONES and Judge LAWRENCE concur.