**UNITED STATES**

v.

**William F. BULGER, 081 58 3032, Disbursing Clerk Third Class (E–4), U.S. Navy.**

**NMCM 92 0359.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 21 Nov. 1992.

Decided 16 Feb. 1993.

**1032**

LT Mary Anne Razim–Fitzsimons, Appellate Defense Counsel.

Maj Laura L. Scudder, USMC, Appellate Government Counsel.

Before LARSON, STRICKLAND and ORR, JJ.

ORR, Senior Judge:

Contrary to his pleas, the appellant was convicted by a general court-martial composed of officer and enlisted personnel of making a false official statement and larceny in violation, respectively, of Articles 107 and 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 907, 921. He was acquitted of a charge of bigamy under Article 134, UCMJ, 10 U.S.C. § 934. The members sentenced the appellant to confinement for 90 days, reduction to pay grade E–1, a bad-conduct discharge, a fine of $5,000.00, and to be further confined until the fine was paid but not more than 1 year. The convening authority approved the sentence as adjudged except for the confinement contingent upon paying the fine and forwarded the record of trial for our review in accordance with Article 66, UCMJ, 10 U.S.C. § 866. Before this Court, the appellant assigns four errors[1] in the conduct of his trial.

I.

The appellant initially enlisted in the U.S. Navy in 1980, and he married his first wife (T) on 24 August 1983. By the summer of 1984, however, the appellant and T were living apart in southern California, and during that time frame, the appellant completed part of a petition for summary dissolution of their marriage. The appellant testified that he gave the petition to T for her to complete and the money to file it. Thereafter, he had no contact with T until January 1991, and although he testified that he tried to reach her numerous times during those 7 years, primarily through T's mother in Wisconsin, he was unsuccessful. Throughout this period, it appears the appellant was receiving a Basic Allowance for Quarters (BAQ) at the with-dependent rate and a Variable Housing Allowance (VHA). The appellant, however, was discharged from the Navy in January 1989, reenlisted a few weeks later, and returned to active duty on 6 February 1989. At that time he executed a Record of Emergency Data/Dependency Application, NAVPERS 1070/602R (hereinafter "Page Two") [Prosecution Exhibit (PE) 3], in which he listed T as his wife and answered "YES" to the question "IS SPOUSE DEPENDENT". In addition, he stated that his spouse's address was a specific location in Wisconsin. That address was the address of T's mother. The appellant testified that at the time he had no idea where T actually was, had not been providing support to T since 1984, and thought the marriage might have been terminated. He also testified, however, that his recruiter told him he had to list T on the Page Two because he did not have affirmative evidence of a divorce or dissolu-

---

1.

I. APPELLANT CANNOT BE CONVICTED OF LARCENY, SINCE THE GOVERNMENT FAILED TO PROVE THAT HE WAS NOT LAWFULLY MARRIED DURING THE ENTIRE PERIOD THAT HE RECEIVED MARRIED HOUSING ALLOWANCES.

II. THE GOVERNMENT FAILED TO PROVE THAT APPELLANT INTENTIONALLY FALSELY SIGNED AN OFFICIAL DOCUMENT, AS ALLEGED UNDER CHARGE I.

III. THE COURT–MARTIAL WHICH TRIED APPELLANT LACKED JURISDICTION BECAUSE THE MILITARY JUDGE WAS NOT APPOINTED TO A FIXED TERM OF OFFICE. *United States v. Graf,* 32 M.J. 809 (N.M.C.M.R.1990), petition granted, 34 M.J. 169 (C.M.A.1991). .

IV. APPELLANT'S COURT–MARTIAL LACKED JURISDICTION BECAUSE THE MILITARY JUDGE WAS DESIGNATED IN VIOLATION OF THE APPOINTMENTS CLAUSE OF THE CONSTITUTION. *See* generally U.S. Const. Art. II, § 2, cl. 2; *Freytag v. Commissioner of Internal Revenue,* — U.S. ——, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991). *But see United States v. Coffman,* 35 M.J. 591 (N.M.C.M.R.1992).

tion. In March 1989 the appellant reported for sea duty aboard USS BRISCOE (DD 977), and he served aboard that ship until April 1990. PE 5. The larceny charge stems from the appellant's receipt of $4,535.74 in BAQ and VHA payments between 6 February 1989, the date of his reenlistment, and December 1989.

The appellant also testified that his mother, who died in September 1989, heard from T sometime during the summer of 1989 and his mother told him that T said she had re-married and was divorced from that husband. From this information, the appellant said he concluded that his marriage had been terminated, and he married his second wife (E) on 28 December 1989. When he finally spoke to T in January 1991, however, he said he discovered that she had never filed the petition for dissolution and their marriage relationship had never been terminated. Nevertheless, the appellant submitted a new Page Two on 27 March 1991 (PE 18), for the purpose of adding a child born to him and E, in which he listed E as his spouse and stated that they were married on 27 August 1983 and that he was not previously married. The execution and submission of this 1991 document was the basis for the charge under Article 107, UCMJ.

## II.

In his first assignment of error, the appellant contends that, since he was actually married throughout 1989, he cannot be guilty of the larceny of BAQ and VHA because the entitlement to those allowances depends solely upon marital status and not upon whether a married servicemember actually uses the money to support the dependent spouse. In support of this contention, he cites our decision in *United States v. Roberts*, 33 M.J. 819 (N.M.C.M.R.1991). That reliance is misplaced. In *Roberts*, the trial judge had acquitted Roberts of the larceny (and the lesser included offense of wrongful appropriation) of the difference between BAQ at the with-dependent rate and the without-dependent rate because the judge found that Roberts was actually married during the period in issue and that the " 'entitlement [to BAQ at the with-dependent rate] results from the status of the service member's spouse, not from the amount of contribution [to the support of the spouse]. *See United States v. Allen*, 27 M.J. 234 (C.M.A.1988).' " 33 M.J. at 820. Although we did not dispute the trial judge's determination, our holding in *Roberts* actually dealt with the question whether the military judge had properly applied the rule announced in *United States v. Thomas*, 13 C.M.A. 278, 32 C.M.R. 278 (1962), in finding Roberts guilty of an attempted wrongful appropriation.

In the case before us, the Government did not rely upon statutory and regulatory criteria [2] for establishing that the appellant was not entitled to either BAQ or VHA payments during 1989 but upon the testimony of a retired Master Chief Disbursing Clerk who, following his retirement, was the disbursing officer at the Personnel Support Activity in Norfolk, Virginia, at the time of trial and the preceding 10 years. That individual was qualified as an expert in pay entitlement matters, and he testified that while a married servicemember is automatically entitled to BAQ, if the member is not supporting his or her spouse, the

**2.** To the extent this opinion relies upon the statutory and regulatory basis for determining the entitlement to BAQ and VHA, we take judicial notice of those statutes and regulations. Mil.R.Evid. 201(f); Art. 66(c), UCMJ, 10 U.S.C. § 866(c); *cf. United States v. Wootton*, 25 M.J. 917 (N.M.C.M.R.1988). We take notice solely for the purpose of addressing the appellant's contention that he cannot be found guilty of larceny as a matter of law. We find the evidence admitted at trial sufficient beyond a reasonable doubt to establish the appellant's guilt of this offense, but the appellant did not contest this offense on the theory now presented on appeal. Consequently, it is apparent the Government did not consider it necessary to introduce the statutory and regulatory basis for the expert opinion the Government otherwise relied on in this case, and we do not find the evidentiary gaps in the record of trial now before us that characterized the record in *Wootton*. In taking judicial notice of these matters for the first time on appeal, we also note that the appellant was, himself, a Disbursing Clerk Third Class, who had worked in that field since the summer of 1984 and who also testified that he was aware he had a "dependency problem" in 1984. Record at 100.

member is not entitled to BAQ.[3] Record at 59.

The statute applicable to a service member's entitlement to BAQ provides:

(a) Except as otherwise provided by law, a member of the uniformed service who is entitled to basic pay is entitled to a basic allowance for quarters at the monthly rates prescribed in accordance with section 1009 of this title or as otherwise prescribed by law, according to the pay grade in which he is assigned or distributed for basic pay purposes....

(b) Except as otherwise provided by law, a member of a uniformed service who is assigned to quarters of the United States or a housing facility under the jurisdiction of a uniformed service, appropriate to his grade, rank, or rating and adequate for himself, and his dependents, if with dependents, is not entitled to a basic allowance for quarters....

. . . .

(c)(2) A member of a uniformed service without dependents who is in a pay grade below pay grade E–7 is not entitled to a basic allowance for quarters while he is on sea duty....

. . . .

(h) The Secretary concerned, or his designee, may make any determination necessary to administer this section with regard to enlisted members, including determinations of dependency and relationship, and may, when warranted by the circumstances, reconsider and change or modify any such determination....

. . . .

(j)(1) The President may prescribe regulations for the administration of this section....

. . . .

37 U.S.C. § 403. Since the appellant was in a pay grade below E–7 and assigned to sea duty throughout the period in question, the issue is whether the appellant had dependents. Neither this statute nor 37 U.S.C. § 1009 defines who is a "dependent".[4] Whether the appellant is entitled to receive VHA depends upon his entitlement to BAQ. "[A] member of a uniformed service entitled to basic allowance for quarters is entitled to a variable housing allowance under this section whenever assigned to duty in an area of the United States which is a high housing cost area with respect to that member...." 37 U.S.C. § 403a(a)(1).

The Navy implements these statutes in the Pay and Personnel Procedures Manual (PAYPERSMAN), NAVSO P–3050, which addresses both the entitlement to BAQ and the preparation of the form (a Page Two) necessary for a member of the U.S. Navy to claim that entitlement. As to the former, the PAYPERSMAN merely provides a cross-reference to paragraphs 30201 and 30221 of the Department of Defense's Military Pay and Allowances Entitlements Manual (DODPM).[5] PAYPERSMAN, para.

---

3. These somewhat contradictory statements reflect confusion between actually providing support as a prerequisite for entitlement and the fact that the regulations do not require prior *proof* of support when a person in certain relationships with a service member is claimed as a dependent. See the Department of Defense Military Pay and Allowances Entitlements Manual (DODPM), para. 30236a, quoted in part, below. In effect, the DODPM creates a presumption that a married servicemember is providing support to a lawful spouse and legitimate, unmarried, minor children. In the absence of a complaint of nonsupport or other contrary information, a member need not provide evidence of actual, adequate support. This permits a servicemember to receive housing allowances even in those situations where the spouse has independent means and may not actually need those allowances to maintain a household. Consequently, a spouse may be dependent only in the sense that he or she is eligible for benefits and qualifies the member for entitlements even though the spouse is not *actually* dependent on the servicemember. In this situation the concept of dependency may depend more on the liability for support and the willingness to provide it than either the need for support or actual support. None of this detracts, however, from the fundamental proposition that more than just having a legitimate spouse is required for the entitlement to exist.

4. 37 U.S.C. § 1009, referenced in subsection (a) of 37 U.S.C. § 403, quoted above, involves the President's authority to make adjustments to the compensation paid to members of the uniformed services and is not relevant to the issue presented in this case.

5. Quotations from and references to the DODPM in this opinion are to the DODPM as it existed on 6 February 1989, which included amendments through Change 12 of 9 December

30211. Those two paragraphs provide, in applicable part: "BAQ is payable to members on active duty, according to the pay grade in which serving or appointed for basic pay purposes, as set forth in this chapter." DODPM, para. 30201a.

A member with dependents who is entitled to basic pay is entitled to BAQ at the rates prescribed for members with dependents when:

(1) Adequate government quarters are not furnished for the member and dependents without payment of rental charge.

(2) Adequate government quarters are not furnished for the member's dependents ... even though quarters are assigned for the member's occupancy....

....

DODPM, para. 30221. Although the DODPM Glossary of Terms states that "dependent means ... [s]pouse" without further qualification as to support, that glossary definition is qualified by the introductory statement: "These definitions have application unless the term in question is otherwise qualified or defined in the pertinent chapter of the manual." DODPM, Attach. 1, A1-1 to A1-2. The regulatory sections of the DODPM state, in relevant part:

—"A member is not entitled to BAQ on behalf of ... [a] dependent whose whereabouts is unknown and whose absence or whereabouts remains unexplained." DODPM, para. 30224a.

—"Dependency must be approved before entitlement to BAQ is authorized." DODPM, para. 30224c.

—"A member's lawful spouse ... [is] at all times considered [a] dependent[ ] for BAQ purposes, except under the situations shown ... in paragraph[ ] 30224a [quoted above]...." DODPM, para. 30232.

—"Proof of support of a lawful spouse ... is generally not required." DODPM, para. 30236a.

The import of these various provisions and the general purpose of the BAQ entitlement is summarized as follows:

A member is not entitled to BAQ on behalf of a dependent the member refuses to support or does not support. The statutory purpose of dependent rate BAQ is to at least partially reimburse service members for the expense of providing private quarters for their dependents when government quarters are not furnished, and not to grant the dependent rate of BAQ as a bonus merely for the technical status of being married....

DODPM, para. 30236b. Notwithstanding the trial judge's determination in *Roberts*, it would appear from these provisions that the testimony of the expert on pay entitlements was substantially correct when he stated in general terms that if a service member is not actually supporting his or her spouse, the member is not entitled to BAQ.

We also disagree with the *Roberts'* trial judge when he relied on the Court of Military Appeals' decision in *Allen* on the question whether the entitlement to BAQ at the with-dependent rate requires the provision of support. We read *Allen* as deciding whether the trial judge in that case properly refused to recognize a state court decree declaring Allen's divorce void *ab initio* which thereby transformed the accuracy of Allen's earlier representation that he was married throughout the period he was receiving BAQ at the with-dependent rate. The Court held that the existence or non-existence of a marriage relationship is a matter of state law and a military judge cannot ignore aspects of a valid state court decree concerning the existence of that relationship. 27 M.J. at 238–39. Although the Court set aside Allen's conviction for larceny of the BAQ funds, the Court stated: "Our holding today relates to three of the false-official-statement offenses and the larceny offense, since it also depended on a lawful determination of ... [Allen]'s marital status...." 27 M.J. at 239 (citation omitted). Since the Government's theory in prosecuting Allen was that he was receiving BAQ payments when he was not lawfully married, it is uncertain if any evi-

1988. As for the PAYPERSMAN, no relevant changes were made to that manual since the appellant completed the Page Two on 6 February 1989.

dence of Allen's actual use of the allowances he was paid was even offered and the Court of Military Appeals never mentions support [6] but resolves the case on the insufficiency of the Government's proof that Allen was not married during the time he was drawing BAQ at the with-dependent rate. 27 M.J. at 236–237. Consequently, we conclude that *Allen* is not precedent for the position the trial judge in *Roberts* sought to draw from it. *Cf. United States v. Antonelli*, 35 M.J. 122, 128 (C.M.A.1992) (since the accused "was in fact *not* paying support for his daughter, he was not entitled to the allowances therefor....").

■ Having reached the conclusion that during the period of time alleged in the larceny charge the appellant was not entitled to BAQ at the with-dependent rate, the question remains whether the evidence supports his conviction of that offense. The military judge properly instructed the members on a wrongfully obtaining theory of larceny and advised them that the obtaining was not wrongful if it occurred through negligence, through an actual mistaken belief of right no matter how unreasonable that belief might have been, or through an authorization by apparently lawful orders. Record at 160–61. The document on which the Government relied to show that the funds were wrongfully obtained was the February 1989 Page Two submitted by the appellant. As we have indicated, two aspects of the information provided by the appellant on that form might be considered false: his affirmative response to the query, "IS SPOUSE DEPENDENT", and his entry of an address for T when he had no idea where she actually was residing at the time.

As we have stated above, the submission and preparation of a Page Two is governed by the PAYPERSMAN, which requires all Navy members with dependents to submit the form (para. 30212) and provides detailed instructions for its completion (para. 90434). Instructions for the completion of block 12 of the Page Two, prefaced as we have already noted by the query "IS SPOUSE DEPENDENT", are:

> See DODPM, Glossary of Terms, for definition of dependent. Type YES or NO in block 12. If member's wife/husband is on active duty in any of the Armed Forces, type NO in block 12. If member's wife/husband is not on active duty in any of the Armed Forces, type YES in block 12....

PAYPERSMAN, para. 90434g(12). This provision is not a model of clarity, particularly in light of the unqualified reference, noted above, to a spouse as a dependent in the DODPM Glossary of Terms. Nevertheless, if the term "spouse" was always synonymous with "dependent" there would seem to be little purpose in specifically asking "IS SPOUSE DEPENDENT".[7] In addition, the last sentence of the quoted excerpt from the instructions seems to direct an affirmative response if the spouse is a civilian and a negative response if the spouse is also a member of the armed services. It is unclear if that is intended as the sole criterion for deciding whether to enter YES or NO, but if affiliation with the armed services was intended to be the sole criterion for answering the "IS SPOUSE DEPENDENT" query, it is indeed peculiar that the question is not simply "IS SPOUSE A MEMBER OF THE ARMED SERVICES" or some similar query.

Even if we found as a matter of law, however, that the appellant's affirmative

---

6. In a separate opinion, Judge Cox does write that since the state court decree voiding its earlier divorce decree rendered Allen married, "[h]e thereby became liable for support and maintenance of his wife, and he may have incurred other liabilities imposed upon him by ... [state] law. If he was liable for support and maintenance, then he was entitled to dependent benefits." 27 M.J. at 240 (Cox, J., concurring in part and dissenting in part). It is still uncertain, however, whether the question of dependency was actually raised since Judge Cox sub-

sequently stated: "If a servicemember is accused of a crime arising out of his marital status and the issue is whether he was married, then the state has the power to declare his status." *Id.*

7. Although we may be on uncertain ground in expecting that there should be a logical reason for every query on a Government form, there appears to be no reason to ask a tautological question.

answer to the query, "IS SPOUSE DE-PENDENT", was not sufficient proof of an intent to steal under the ambiguous instructions provided in the PAYPERSMAN, the fact remains that the appellant entered an address for T when he had no idea where she actually was.[8] Since the DODPM clearly states that a service member is not entitled to BAQ at the with-dependent rate when the whereabouts of the dependent is unknown, we conclude that the falsity of that response alone was sufficient to support the appellant's conviction on a wrongfully obtaining theory of larceny.[9]

### III.

As to the appellant's second assignment of error, we conclude that the evidence was legally sufficient to establish the appellant's guilt of intentionally falsifying the 27 March 1991 Page Two, and we are, ourselves, convinced beyond a reasonable doubt of his guilt of that offense. *United States v. Turner,* 25 M.J. 324 (C.M.A.1987).

### IV.

The appellant's third and fourth assignments of error are also without merit. *See United States v. Graf,* 35 M.J. 450 (C.M.A. 1992); *United States v. Weiss,* 36 M.J. 224 (C.M.A.1992); *United States v. Coffman,* 35 M.J. 591 (N.M.C.M.R.1992) (per curiam).

Accordingly, the findings and sentence, as approved on review below, are affirmed.

Senior Judge STRICKLAND concurs.

LARSON, Chief Judge
(concurring/dissenting in part):

I join the majority in affirming the findings of guilty to Charge I and its specification, as I am convinced beyond a reasonable doubt that the appellant signed the document in question with full knowledge of the falsity of its contents and that he did so with the intent to deceive. Manual for Courts–Martial (MCM), Part IV, paragraph 31b. Likewise, I concur with the majority's resolution of the third and fourth assignments of error.

However, I part company with the majority in its analysis and affirmance of Charge III and its specification, larceny of basic allowance for quarters (BAQ) and variable housing allowance (VHA) through false pretenses. Senior Judge Orr does an excellent job of sorting out the regulations that determine whether a service member who is married but is not supporting his spouse is entitled to BAQ and VHA. Under the applicable regulation, Department of Defense Pay and Allowances Entitlements Manual (DODPM), it appears that the appellant was not so entitled for two reasons: 1) His spouse's whereabouts were unknown (DODPM, para. 30224a) and 2) He was not supporting his spouse (DODPM, para. 30236b).[1]

---

**8.** Chief Judge Larson states in his separate opinion that "there is not a shred of evidence in the record (nor ... in the DODPM and the PAY-PERSMAN) that identifies this address entry as a basis for entitlement." While it is true that nothing identifies any one or more entries on a Page Two as the basis for a servicemember's entitlement to BAQ, the PAYPERSMAN clearly indicates that it is the submission of the completed *form* and any other required documentation that establishes the basis for the entitlement, not any particular part or entry on that form, and the DODPM specifically states that "[a]ny member who submits a claim for BAQ which contains false statements is subject to court-martial or criminal prosecution." DODPM, para. 30204.

**9.** Although our fellow judges set aside a conviction for submitting a false claim for BAQ and VHA in *United States v. Tatum,* 34 M.J. 1115 (N.M.C.M.R.1992), indicating agreement with

the trial judge's remarks in *Roberts,* the reversal of Tatum's false claim conviction was based on the absence of any evidence of a false statement by Tatum in the submission of his claim for BAQ and VHA. 34 M.J. at 1118. Neither *Tatum* nor the present case stand for the proposition that mere failure to support is a legally sufficient basis for a conviction for either filing a false claim for or larceny of BAQ and VHA funds.

**1.** *United States v. Allen,* 27 M.J. 234 (C.M.A. 1988), *United States v. Tatum,* 34 M.J. 1115 (N.M.C.M.R.1992) and *United States v. Roberts,* 33 M.J. 819 (N.M.C.M.R.1991), would seem at first to stand for the proposition that marital status alone entitles a service member to BAQ. A closer reading of *Allen* and *Roberts* reveals that these cases address only specific, narrow issues which are adequately discussed in the majority opinion and which do not pertain to the issue in this case. *Tatum,* citing the applica-

My main problem with using these provisions to determine the foundational question of entitlement in this case is that neither the DODPM nor the Navy's implementing directive, the Navy Pay and Personnel Procedures Manual (PAYPERSMAN), was introduced at trial nor was any reference made to them. "A conviction must stand or fall on the evidence admitted at trial." *United States v. Carey*, 11 C.M.A. 443, 445, 29 C.M.R. 259, 261 (1960) (Quinn, C.J.). While we may take judicial notice of these regulations on appeal, we cannot allow them to fill in evidentiary gaps in the record. *United States v. Wootton*, 25 M.J. 917, 919 (N.M.C.M.R.1988).

The only material evidence concerning the appellant's entitlement to BAQ came in the form of testimony from the Government's expert witness, a retired master chief disbursing clerk and the current disbursing officer at Norfolk. He stated that a service member who does not support his spouse is not entitled to BAQ or VHA, but, his very next answer was "if a member is married, he is automatically entitled to BAQ." R. 59. This answer was, in turn, followed by another that reaffirmed his original assertion, *i.e.*, a member is not entitled to BAQ or VHA if he is not supporting his spouse. Notwithstanding the majority opinion's explanation of this inconsistent testimony in footnote 2, this evidence is not a sufficient foundation upon which to conclude that actual support of one's dependent is a prerequisite to entitlement to BAQ. It is all the more flimsy when one considers the fact that the Navy's implementing form, NAVPERS 1070/602R, Record of Emergency Data/Dependency Application—known commonly in the Navy as a "Page Two"—does not, on its face, require an affirmative assertion of support in order to trigger entitlement to BAQ. It appears that the simple assertion of status as a dependent will suffice. R. 60. Prosecution Exhibits 3 and 4. In summary, I am not convinced

that this record establishes that the appellant was not entitled to BAQ. If he were entitled, then his obtaining would not be "wrongful," nor would it be of "property of the United States." See *United States v. Bost*, 34 M.J. 1094 (A.F.C.M.R.1992).

There is another, even more fundamental flaw in the Government's case. Larceny by false pretenses requires that the false pretense be an "intentional and effective cause of the obtaining." MCM, Part IV, para. 46(c)(1)(e). In other words, the false representation has to be the means by which the accused acquired the property. See *United States v. Mosley*, 35 M.J. 693 (N.M.C.M.R.1992). In *Mosley*, the false pretense—through which the accused allegedly obtained Variable Housing Allowance (VHA) to which she was not entitled—was the entry of a false address for her dependent husband on a Command Sponsorship Request. The evidence at trial established that this false entry had no bearing on her entitlement.

In this case, the principal document offered by the Government to prove the false representations was Prosecution Exhibits 3, a Page Two effective 6 February 1989. The representations on this exhibit that appear to specifically trigger entitlement to BAQ (which is, itself, a prerequisite to receipt of VHA) are that the member is married and that his spouse is his dependent. (R. 60). Since the governing directives seem to base the definition of "dependent" on marital status alone (DODPM, Attachment 1 (Glossary of Terms), PAYPERSMAN, para. 90434g(12)), these Page Two entries are true. The only false entry is the address of the appellant's spouse. Yet, there is not a shred of evidence in the record (nor, from my reading, in the DODPM and the PAYPERSMAN) that identifies this address entry as the basis for any entitlement. It is more likely that it served another of the many commonly known purposes of the Page Two: to notify the spouse in case of death, serious injury

ble United States Code provisions, reads the DODPM to require no more than status as a dependent to establish entitlement to BAQ and therefore considers the fact of nonsupport as merely an administrative basis to justify recoup-

ment of BAQ and not as a basis to establish fraud at the time of application. In this case, I do not take a position on this particular point as it is more appropriate to decide the BAQ/VHA entitlement question on other grounds.

or other emergency involving the member. In the end, the Government may have proved that the appellant made a false entry and even that he did so with the intent to defraud, but they did not prove, to my satisfaction anyway, that this false representation was the means by which he obtained property to which he was not entitled.

Accordingly, I must dissent from the majority's holding that the offense alleged under Charge II has been proved beyond a reasonable doubt. Article 66(c), 10 U.S.C. § 866(c). I would dismiss that charge and authorize a rehearing on sentence.

UNITED STATES

v.

**Baron C. HORTON, 075 54 9731, Yeoman Seaman (E–3), U.S. Navy.**

**NMCM 91 3279.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 6 Sept. 1991.

Decided 16 Feb. 1993.

Maj G.S. WARNER, USMC, Appellate Defense Counsel.

LCDR A.L. HAIZLIP, JAGC, USNR, Appellate Defense Counsel.

Capt A. DIAZ, USMC, Appellate Government Counsel.

Before FREYER, C.J., and WELCH and MOLLISON, JJ.