UNITED STATES, Appellee,

v.

Sergeant Ricky T. ANDERSON,
408–02–9730, United States
Army, Appellant.

ACMR 9102049.

U.S. Army Court of Military Review.

12 July 1993.

For Appellant: Major James M. Heaton, JAGC, Captain Michael E. Smith, JAGC (on brief).

For Appellee: Lieutenant Colonel Joseph A. Russelburg, JAGC, Major Timothy W. Lucas, JAGC, Captain Sheila E. McDonald, JAGC (on brief).

Before WERNER, GRAVELLE, and JOHNSTON, Appellate Military Judges.

## OPINION OF THE COURT

GRAVELLE, Judge:

Contrary to his pleas, the appellant was found guilty by a special court-martial consisting of officer and enlisted members of one specification alleging a violation of a general regulation and of twenty-six specifications of dishonorably failing to pay debts, in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 934 (1988) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for six months, forfeiture of $502.00 pay per month for six months, and reduction to Private E1.

The appellant asserts *inter alia* that the evidence is legally and factually insufficient to support his conviction of dishonorable failure to pay debts arising out of obligations to pay family support, child support, and an automobile loan. In raising this issue the appellant questions whether a soldier's failure to pay family and child support can constitute a failure to pay a "debt" under Article 134, UCMJ. We hold that the family support obligation in this case is not a "debt;" that the evidence is insufficient to show that the appellant dishonorably failed to pay a "debt" of child support; and, that curative action is required concerning the "debts" from the automobile loan.

### I. Facts.

This case arose out of the stormy breakup of the marriage of two soldiers and involves the appellant's obligation to provide family and child support to his estranged wife and children. It also involves his failure to pay monthly installments on a bank loan for an automobile the appellant purchased.

The government charged the appellant with violating the punitive provisions of

Army Regulation 608–99 regarding payment of family support. The appellant's conviction of that particular charge is not in dispute. Army Regulation 608–99, Family Support, Child Custody, and Paternity (Update Issue 2, 22 May 1987) [hereinafter AR 608–99] provides that violations of the support requirements of the regulation may be punishable under Article 92, UCMJ. *See United States v. Brunson,* 30 M.J. 766 (A.C.M.R.1990). *See also United States v. Cowan,* 34 M.J. 258, 260 n. 2 (C.M.A.1992).

In novel pleading, the government also charged him with twenty-six specifications of dishonorably failing to pay debts. These twenty-six specifications consist of three groupings of "debt." The first grouping consists of nine specifications alleging a failure to provide "interim minimum financial family support payments" each month for nine consecutive months between September 1989 and May 1990, with the failure to pay alleged to be continuing from the first day of the month it was due up until 17 April 1991, the date the charges were preferred.[1] The government theory as to these specifications at trial and again on appeal is that the amount of the monthly "debt," as well as the "debt" itself, was created by provisions of AR 608–99, which establish minimum financial support requirements for soldiers. Under AR 608–99, a soldier is obliged to provide financial support either in an amount established pursuant to a court order or written support agreement; or, in the absence of a court order or written support agreement, at a rate established by the regulation. For soldiers married to one another, and when one parent has custody of the children, as is the case here, the minimum support requirement established by the regulation is computed as the difference between the noncustodial parent's Basic Allowance for Quarters (BAQ) at the "with dependents" and "without dependents" rates. AR 608–99, para. 2–4b(4)(a). The appellant received BAQ each month along with his monthly pay. In the appellant's case, the amount of family support he was obligated to provide was stipulated as $109.20 per month.

The second grouping of six specifications asserts that the appellant failed to pay 810 German Marks (DM) in court-ordered child support which was due each month for six consecutive months commencing in June 1990 and continuing through November 1990. The failure to pay each month continued from the monthly due date until 17 April 1991, the date charges were preferred.[2] The government's theory of "debt" was based on the provisions of AR 608–99 and on the existence of a German court order issued in June 1990 requiring payment of a sum certain per month for child support.

The remaining grouping of eleven specifications alleges a dishonorable failure to make monthly automobile loan payments to a German bank, due each month for eleven consecutive months from May 1990 through March 1991. The failure to pay each month continued from the monthly due date until the date the charges were preferred.[3] The "debt" here was based on

1. For example, specification 1 alleges:

 In that Sergeant Ricky T. Anderson, U.S. Army, being indebted to Specialist Betty J. Anderson in the sum of about $109.20 for an interim minimum financial family support payment, which amount became due and payable between on or about 1 September 1989 and 30 September 1989, did, at or near Frankfurt am Main, Germany, from between 1 September 1989 and 17 April 1991, dishonorably fail to pay said debt.

2. Typical of this grouping is specification 10:

 In that Sergeant Ricky T. Anderson, U.S. Army, being indebted to Specialist Betty J. Anderson in the sum of 810.00 DM for a child support payment, which amount became due

 and payable between on or about 1 June 1990 and 30 June 1990, did, at or near Frankfurt am Main, Germany, from between on or about 1 June 1990 to 17 April 1991 dishonorably fail to pay said debt.

3. An example is specification 16:

 In that Sergeant Ricky T. Anderson, U.S. Army, being indebted to Dresdner Bank in the sum of about 344.00 DM for a car loan payment, which amount became due and payable between on or about 1 May 1990 and 31 May 1990, did, at or near Frankfurt am Main, Germany, from between on or about 1 May 1990 to 17 April 1991, dishonorably fail to pay said debt.

a loan contract from a German bank, the terms of which are generally described in a stipulation of fact entered into evidence at trial. The stipulation states in pertinent part:

On 3 January 1990, the accused, SGT Ricky T. Anderson, applied to Dresdner Bank for a 10,000 DM [Deutsche Mark] automobile loan.... The accused was to pay $250 each month for 36 months through a military allotment. The accused was to set up an allotment by the end of February 1990.

On 12 January 1990, the accused received the 10,000 DM loan minus 237 DM (the first month's payment which the bank took out of the loan amount before the accused received the loan), and minus 262.88 DM to cover the cost of compulsory life insurance to insure repayment of the loan in the event of the accused dying before the loan was repaid.

The allotment was never set up. The accused made only the two following payments on the loan: 18 May 1990, 720 DM; and, 29 Jun 1990, 344 DM. With interest charges and the principle [sic], the accused currently owes 11,288 DM on the automobile loan.

At trial, the appellant's estranged wife was the principal witness against him. The wife testified that they separated in August 1989. After the appellant expressly refused to provide financial support for his family, she complained to her commander, who notified the appellant's command. The appellant's commander counselled him in writing on 7 June 1990 regarding his responsibility under AR 608–99 to support his family. The wife testified that the only money she received was in September and October 1990, when the appellant paid $100.00 each month. The wife also sought and obtained a court order from the German family court. Under the terms of the court order, as described by the wife and not disputed by the appellant, he was ordered to pay child support in the amount of 810 German Marks per month for six months beginning in June 1990. She testified that she received no money based on the court order.

The government also presented evidence that in November 1990, the appellant totally destroyed the wife's car in an accident, and thereafter pocketed the 11,000 DM from the insurance company. These insurance proceeds were needed to pay off the outstanding balance on the bank loan used to purchase the vehicle. Still later, he took out a large loan from a German bank to purchase a new automobile, failed to comply with a requirement to begin an allotment from his pay, and quickly became delinquent in making monthly payments so that the bank was forced to recall the loan and demand payment in full. During this same time frame, he received an advance pay from the Army finance office of over $3000.00 to pay a deposit on an apartment he had voluntarily rented.

The appellant's testimony differed considerably from that of his estranged wife. He testified that he was financially strapped and could not make regular child support payments. He produced a number of documents purporting to show that he had paid child support on several occasions in addition to the two payments of $100.00 each described by the wife, and to show that he had paid off the loan on the wife's automobile that he had wrecked. Regarding the German court order to pay child support, he testified that a legal assistance attorney advised him that the court order was binding even though he intended to appeal the court order. Despite the legal advice, he made no payments while he contested the court order in the German court. His appeal was rejected in November 1990. He further testified that the automobile he purchased was meant for his wife, but that she rejected it. He testified that he had made several payments on his automobile loan, but financial difficulties in the summer of 1990 prevented him from continuing to make payments. He did not explain why he failed to start an allotment from his pay for the monthly payments as he had obligated himself to do as part of the loan agreement. He admitted receiving a letter dated 19 June 1990 from the bank in which the bank demanded immediate payment of the entire loan amount, and stating that

failure to repay the entire amount within fourteen days would result in legal action to collect the debt.

## II. Dishonorable Failure to Pay a Debt.

### A. The Offense Itself

Imposing criminal sanctions upon a servicemember for dishonorably failing to pay debts has been accepted by military courts but with some reservations. *See e.g. United States v. Gardner*, 35 M.J. 300 at 302 (C.M.A.1992) (Cox, J., concurring); *United States v. Kirksey*, 6 U.S.C.M.A. 556, 20 C.M.R. 272 at 275 (C.M.A.1955).

 The elements of the offense of dishonorable failure to pay a debt under Article 134, UCMJ, are: (1) that the accused was indebted to a particular person or entity in a certain sum; (2) that the debt became due and payable on or about a certain date; (3) that while the debt was still due and payable, the accused dishonorably failed to pay this debt; and, (4) that under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces. Manual for Courts–Martial, United States, 1984, Part IV, para. 71(b) [hereinafter MCM, 1984] (emphasis added). More than simple negligence in nonpayment is required; the failure to pay must be characterized by deceit, evasion, false promises, or other distinctly culpable circumstances indicating a deliberate nonpayment or grossly indifferent attitude toward one's just obligations. Para 71c, *Id. See generally Gardner*, 35 M.J. 300; *United States v. Brown–Austin*, 34 M.J. 578 (A.C.M.R. 1992).

"Debt" is not defined in the Manual for Courts–Martial or in military precedents. The term itself has a number of definitions in Black's Law Dictionary. It is variously defined as:

 A sum of money due by certain and express agreement. A specified sum of money owing to one person from another, including not only obligation of debtor to pay but right of creditor to receive and enforce payment. [2] A fixed and certain obligation to pay money or some other valuable thing or things, either in the present or in the future. [3] In a still more general sense, that which is due from one person to another, whether money, goods, or services. [4] In a broad sense, any duty to respond to another in money, labor, or service; it may even mean a moral or honorary obligation, unenforceable by legal action.

Black's Law Dictionary 363 (5th ed. 1981).

 We believe that the initial, and strictest, definition of "debt" found above should apply in a criminal law context. Reinforcing our view is the fact that this definition conforms most closely with the terminology and description of the offense contained in MCM, 1984, para. 71(c).

### B. Family Support as a "Debt" Created by Regulation

Initially, we must decide whether the appellant's failure to provide his dependents with monthly family support constitutes a failure to pay a "debt" within the meaning of Article 134, UCMJ. Appellate defense counsel point out that the Navy–Marine Corps Court of Military Review recently commented *in dicta* that failure to provide support to dependents could possibly be a "debt" within the meaning of the offense of dishonorably failing to pay a debt. *United States v. Tatum*, 34 M.J. 1115, 1118–19 (N.M.C.M.R.1992).[4] However, because the Marine Corps regulation regarding family support did not specify a "sum certain" that was "due and payable on or about a certain date," and because the record lacked evidence of dishonor in the failure to pay, the Navy–Marine Corps court was not required to decide the issue. Unlike the Marine Corps regulation in *Tatum*, the Army regulation relied upon by the prosecution here provides a formula whereby a monthly minimum sum certain is established.

 Appellate defense counsel also point out that the Air Force Court of Military Review has concluded that a service-

---

**4.** The *Tatum* case involved a novel charge of "dishonorable failure to support dependents."

member's spouse has no possessory or other ownership right to BAQ at the "with dependents" rate, and therefore BAQ cannot be the object of larceny. *United States v. Evans,* 34 M.J. 1051 (A.F.C.M.R. 1992); *United States v. Bost,* 34 M.J. 1094 (A.F.C.M.R.1992). We agree with the Air Force court's reasoning that the spouse (and family) has no possessory interest in the money. Moreover, the statutory *entitlement* to money received for family support belongs to the appellant—not to his family—and is based on his married status. *Tatum,* 34 M.J. at 1117–18; *United States v. Roberts,* 33 M.J. 819 (N.M.C.M.R.1991). It remains his *entitlement* until an administrative determination is made by the government that he is not entitled to it as a result of not supporting his dependents. *Tatum,* 34 M.J. at 1118. Recently, the United States Court of Military Appeals has held that if a servicemember was not paying family support, he was not *entitled* to allowances therefor; and therefore those monies remained the property of the United States, inasmuch as the appellant was not using those monies for their intended purpose. *United States v. Antonelli,* 35 M.J. 122, 127–28 (C.M.A.1992).

■ Under the rationale of the cases cited above, when read in conjunction with MCM, 1984, para. 71 and the definition of "debt" adopted above, we conclude that the appellant's failure to pay family support is not a failure to pay a "debt." Because the family was not a "creditor" with a possessory or other ownership right to the money, and because the money remained the property of the United States, there was by definition no "debt." Therefore, the appellant could not, as a matter of law, be convicted of dishonorable failure to pay a debt as to specifications one through nine of Charge II.

### C. Sufficiency of the "Debt" of Child Support Based on a German Court Order

■ The test for legal sufficiency is whether, considering the evidence in the light most favorable to the prosecution, a reasonable fact finder could have found all the essential elements beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The test for factual sufficiency is whether, after weighing the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced of the appellant's guilt beyond a reasonable doubt. *United States v. Turner,* 25 M.J. 324, 325 (C.M.A. 1987).

■ The government's theory of "debt" in specifications 10 through 15 is based on AR 608–99, as described above, and on the German family court order. While we have many of the same reservations described above concerning these specifications, we need not decide in this case if the regulation in conjunction with the German court order creates a debtor-creditor relationship. Instead, we find there are numerous deficiencies of proof which cause us to dismiss these specifications for factual insufficiency. There are simply too many unanswered questions here. For instance, while the appellant testified he received the court order, there is no clear evidence exactly when he received it. Moreover, a copy of the order itself is not in evidence.[5] While there was testimony as to the amount to be paid, there is simply not enough information to prove that the court order created a "debt." In short, we are not convinced beyond a reasonable doubt of the appellant's guilt regarding these specifications.

### D. Automobile Loan Payments as Multiple "Debts"

■ We find there is sufficient evidence of evasion, unkept promises and deceit to show that the appellant's failure to meet his financial obligations regarding the

---

**5.** For reasons not explained, the court order itself was marked as a prosecution exhibit for identification and identified in court, but when reminded by the military judge that it had not been entered into evidence, the trial counsel deliberately chose not to introduce it or a translation of it into evidence.

automobile loan was "dishonorable." [6] Further, we have no doubt that the automobile loan contract can and did create a "debt." However, we conclude that there is but one "debt" created under the terms of the loan, and not a separate "debt" each month that an installment payment was due.[7] In reaching this conclusion, we distinguish between the terms "debt" and "installment payment." "Debt" is the amount of the loan, while installment payments are the means of liquidating the debt. *See* "installment," Black's Law Dictionary, 717 (5th ed. 1979). Failure to make installment payments is merely some evidence of a dishonorable failure to pay the overall debt. *See e.g. Gardner*, 35 M.J. at 302 (failure to make timely payments considered in determining if the failure to pay the debt is "dishonorable").[8] *See also United States v. Duval*, 31 M.J. 650 (A.C.M.R.1990). We therefore find that under the terms of the loan agreement there were not thirty-six separate "debts." Rather, we hold that there was one "debt" in the amount of 11,000 DM.[9]

We have examined the evidence of record and find that the creditor bank notified the appellant that the entire loan was due when the bank demanded immediate payment of the entire loan amount on 19 September 1990. Under the unique facts of this case, we find that the evidence supports a finding that this date became the date that the entire loan was "due and payable."

Having concluded that there was but one debt in this case, we believe that the appropriate remedy is to affirm one specification of dishonorable failure to pay a just debt. While we could conceivably affirm one specification alleging a debt of 10,000 DM, under the circumstances presented in this case, we find it more appropriate to limit the amount of the debt to the amount as charged by the government. Accordingly, we will affirm one specification alleging a debt of 344 DM, due and payable on or about 19 September 1990. As specification twenty-one of Charge II most closely approximates our findings of fact, we will affirm that specification with minor changes.

### III. Other Issues.

 The appellant also asserts that the military judge erred by admitting over defense objection uncharged misconduct in the form of testimony that the appellant was sexually involved with a woman not his wife. The government concedes error, but argues that it is harmless. Having reviewed the record, including the military judge's *three* limiting instructions to the members, we agree that, if error, it was harmless.

We have reviewed the remaining assertions of error, and find them to be without merit. We have also considered the effect

---

6. *See generally United States v. Moseley*, 35 M.J. 481 (C.M.A.1992). Unlike the situation in *United States v. Elizondo*, 29 M.J. 798 (A.C.M.R. 1989), the evidence in this case showed that the appellant knew exactly what he was doing, and chose to ignore his financial obligations.

7. We recognize that there is some precedent for charging each monthly payment as a separate "debt" for purposes of this offense. *See United States v. Young*, 12 C.M.R. 939 (A.F.B.R.1953) (although payments arise from the same loan, each failure is a separate and distinct default for purposes of determining multiplicity); *United States v. Rothman*, 30 C.M.R. 872, 878–80 (A.F.B.R.1960) (monthly loan payment charged as a "debt").

8. We distinguish between a failure to pay monthly loan installments, as here, and failure to pay monthly fees for military quarters, as occurred in *United States v. Bonar*, 40 C.M.R. 482 (A.B.R.1969), and in *United States v. McArdle*, 27 C.M.R. 1006 (A.F.B.R.1959). Billeting fees become due as the services are provided each month, and are not due until each period of monthly services has been provided.

9. In so holding, we have treated the fragmentation of charges as a legal error based on a misunderstanding of the nature of the debt. If we were to analyze the charging in terms of multiplicity for findings purposes, we would reach the same general result. While multiplicity for findings was not raised at trial, this is a situation in which we would not apply waiver. *See, e.g., United States v. Waits*, 32 M.J. 274, 275–76 (C.M.A.1991); *United States v. Wisemore*, 32 M.J. 602 (C.G.C.M.R.1991); *United States v. Blucker*, 30 M.J. 690 (A.C.M.R.1990); *United States v. Herd*, 29 M.J. 702, 708 (A.C.M.R.1989), *modified*, 32 M.J. 33 (C.M.A.1990) (summary disposition).

of our findings of error on the sentence in this case. Because the military judge instructed the members that the specifications of Charge II were multiplicious for sentencing with Charge I, we find that our decision regarding the findings in this case has little, if any, effect on the sentence in this special court-martial.

The findings of guilty of Charge I and its specification are affirmed. The findings of guilty of specifications one through twenty and twenty-two through twenty-five of Charge II are set aside and those specifications are dismissed. The court affirms so much of specification twenty-one of Charge II as finds that the appellant, being indebted to the Dresdner Bank in the amount of approximately 344 DM, which amount became due and payable on or about 19 September 1990, did, between 19 September 1990 and 17 April 1991, at or near Frankfort am Main, Germany, dishonorably fail to pay said debt. Reassessing the sentence on the basis of the errors noted and the entire record, mindful of *United States v. Sales*, 22 M.J. 305 (C.M.A.1986), this court affirms the sentence.

Senior Judge WERNER and Judge JOHNSTON concur.